Catron, J.
One of the questions presented in this case, arises- upon the validity of the venditioni exponas, upon which the land was advertised for sale, at the time Walker obtained his injunction in 1813.
Suppose no injunction had been obtained by Walker, and the land had been sold to a third person, against whom Walker had brought an ejectment; could Walker have recovered the land, for the reason that the execution sale vested no title in the purchaser? It is presumed not. The court think it probable, that the order of sale was irregular, and subject to be quashed by the court from which it issued, had Walker applied to that court by motion for this purpose before he obtained his injunction; but if he rested satisfied to abide the irregularity, none other had a right to complain. So soon as he filed his bill, and obtained an injunction, the proceedings were treated by him as regular, and the errors, if any, cured by the act of 1801, ch, 6, sec. *370 64, which provides, that a confession of judgment at law, Q¡, ggng 0f an injunction in equity, shall be equal to a release of errors.
We have no doubt the order of sale was, at most, only irregU]ar? ang that a purchaser of the lands ordered to be sold thereby, would have had vested in him a good title. After the injunction was filed, it was apprehended that Walker would not have had the power even to quash the order of sale,had it been irregular.
This court is, in the second place, of opinion, that whilst an execution, or order of sale is in the hands of the Sheriff, levied upon lands, although more than one year after the rendition of the j udgment, no sale of the lands by tbe debtor can be made to defeat such levy, aside from any negligence on the part of the creditor; such purchaser would not be a “bona fide” purchaser, within the meaning of the act of 1799, ch. 14, because he would be presumed to know of the existence of the execution and Its levy; nor would actual knowledge be wanting in one case in a thousand. If he purchases with such actual knowledge, it must be with the intent to defeat the creditor in the collection of his just debt, and the sale would be void by the statute of Elizabeth, and ours of 1801, ch. 25. The legal presumption of knowledge cannot be controverted, and hence there cannot be a “bona fide” purchase, as contemplated by the act of 1799, under such circumstances. It is not possible the legislature- intended, by the act of 1799, to authorise the debtor to dispose of his lands, if not sold by the judgment rendered against him before one year after its rendition, although it had been partly executed by a levy upon such land of the debtor, when the sale took place.
These questions have presented little difficulty; but the remaining one is deemed of great importance to the community, and has been anxiously examined by the court; and more particularly so, as the chancellor, whose opinion we are called upon to revise, and for whom we have the most unfeigned respect, grounded his decree upon the point now proposed to be examined, and which decree we feel ourselves under the necessity of reversing. The ques- *371 lion is, “will the lien of a judgment, recovered in a court of law, (with an execution issued thereon and levied upon the lands of the defendant,) be destroyed by reason of the creditor’s being enjoined by a court of equity from enforcing the execution of his judgment?
The chancellor below was of opinion, that the injunction obtained by the debtor Walker, against Thomas, the plaintiff at law, discharged the lien created by the judgment, and fixed to this particular piece of land by the levy, and left Walker free to dispose of the land pending such injunction.
We lay it down as a general legal position, that an execution debtor can do no act, without the • default of the creditor, that shall work him an injury, and the defendant a benefit; Blumfield’s case, 5 Co. 87. in other words, that the creditor cannot be ousted of his legal rights by the fraudulent conduct of the debtor; Lusk vs. Ramsey, 3 Mun’d. Rep. 54, 55; 18 Johnson’s Rep. 311, 363.
The worst of frauds is a false statement upon oath in a bill exhibited to a court of equity foi an injunction—it combines itself with perjury very frequently; always is an abuse upon the justice of the country, and brings into disrepute the administration of the law, and can destroy none of the legal rights of the creditor, without his default. What are those legal rights? When the judgment is recovered, the creditor has a right to have it satisfied out of all the property and estate of the debtor, personal and real. Porter’s lessee vs. Cocke; Peck’s Rep. 30, and cases cited.
When property is once levied upon, either real or personal, the creditor has a right to have his judgment satisfied by the sale of the same, unless he be guilty of some default, by which he loses his lien. 1 Salk. 322; 1 Burr. 34; 3 Mun’d. Rep. 441. This is a general rule, and to which no exception is found in the present case, as we will endeavor to shew. What is an injunction? A writ issued upon the exparte statement of the defendant at law, made to a court of equity, which admits the validity of the legal rights of the plaintiff at law, but relies upon a statement of facts which could not be there heard; and upon this the injunction is, *372 in the first instance, granted. If the facts are proved true, the injunction is made perpetual on a.final hearing.
But suppose they turn out false and fraudulent; merely to hinder and delay the creditor in the collection Pijs j us¿ debt? The creditor resists the pretended equity at great trouble and expense; and after years of litigation, (fifteen years in this instance,) he procures the bill to be dismissed. Is he then to be told, his lien upon the property, levied upon before the injunction restrained its sale, is gone: the debtor has sold it in the mean time, and is now insol vent. Has the creditor been in any default? None. He has used all possible vigilance to collect his debt, for the last fifteen years; is now contending with the second injunction; throughout has been vigilant, and only hindered and delayed in the collection of his debt by the acts of the debtor. Will not, then, the acts of the debtor do an injury to the creditor, in the enforcing of his judgment, if it is declared that the injunction destroyed the lien ? If this would be the consequence of such a decision, it will be illegal to make it.
But there is another principle governing a court of equity, and by which, alone the injunction can be enforced, by' which it would seem to follow that the common law lien is not affected by granting the writ — to wit: The injunction operates upon the person of Ihe defendant in equity only, and the court assumes jurisdiclion, upon the ground, that the case set forth is wholly beside the matter litigated at law, which, by the rigid rules of that forum, could not be heard there. The judgment at law is admitted to have all its force, and the person of the defendant in equity only operated upon. This is unquestionably the theory of a court of equity; yet .in practice, by courtesy and necessity, courts of law have taken notice of the proceedings by injunction in courts of equity, and said that a defendant at law, who enjoined the plaintiff at law from proceeding to enforce his Judgment, should not, pending such injunction, be allowed, by any of the common law rules applicable to ordinary cases, to place the plaintiff in a worse situation than he was in when the injunction was obtained.
*373 It is now a rule pretty well settled, and with which we concur, that the rights of the plaintiff at law, on the disso-iution of the injunction, shall stand upon the same grounds they did when it issued, and that the courts of law v, ill so far take notice of the injunction as to give full effect to this principle. Haley vs. Riley, Doug. 71, K. B. 1779; so in Burr. 660, Mitchell vs. Cue, 1758; Bosworth vs. Philips, 11 Geo. 3; 2 Bl. Rep. 784. In South Carolina, the same rule prevails. Gibbes vs. Mitchell, 2 Bay’s Rep. 123; and see Peck’s Rep. 64, 65.
The common law rule connected with this is, that when the Sheriff once levied upon property sufficient to satisfy the judgment,he was bound to make the debt, and the defendant’s person and propertynotlevied upon,were discharged from the lien and liability for that debt; that an execution is an entire thing, and when once commenced musí be ended, and cannot be suspended; Clark vs. Withers, 1 Salk, 322, 1 Burr. 34; Lusk vs. Ramsey, 3 Mun’d. Rep. 441. Thus stood the rights of the plaintiff and defendant at law after the levy and before the injunction granted.
Although the above is the general rule, yet by common consent of the courts of law and equity growing out of the necessity of the thing, the rule has been departed from, when the body of the debtor or his goods have been seized upon by the execution, which is afterwards enjoined. In such case, the body is released and the property returned to the debtor,discharged from the lien. The injunction would destroy both debtor and creditor, if the goods were to await the termination of the suit in equity, which might continue many years undetermined. Hence the practice has been uniform, that it is a good return by a Sheriff upon a fi. fa. that the sale had been prevented by injunction.
The counsel for the defendants with great ability urged this point, but stating it as granted that the return of a Sheriff to a fi. fa. that it had been levied, stayed by injunction, and the property returned to the debtor, was generally a good return; and that the property was thereby released from the levy: This is nota rule, bul an exception to the rule, that an execution is an entire thing, and when com *374 menced mast be ended, and cannot be suspended; and exception extends only to the goods of the debtor, which are generally perishable infact, and always presumed be perishable. But is there any such necessity for a de-par[ure from common law rules, when real property, (imperishable, and increasing in value,) has been levied upon? We think not: and that were we to do so, it would be a violation of a settled principle of the common law, rendered sacred by the sanction of many ages, without any reason for such violation.
The great object of the law is to have the creditor’s judgment satisfied out of the debtor’s property. This cannot fail, if a sufficiency is levied upon, unless by some default of the creditor. 1. The judgment is a lien upon all the debtor’s lands for one year. 2d. When the execution is levied upon some particular parcel, this is fixed with the lien after the year. To divest the title of the debtor, there must be a sale, and conveyance to the purchaser by the Sheriff: but so soon as the deed is made, it relates to the time of the purchase, though made’years after; (Porter’s lessee vs. Cock, Peck’s Rep. 39;) the sale refers itself to the levy, and this to the original lien of the judgment. Hence, from the rendition of the judgment to the making of the conveyance by the Sheriff, there will be no point of time when third persons can defeat the creditor’s lien. As to the debtor himself, no negligence on the part of the creditor affects the lien of the judgment. This great end of the law cannot be defeated by a stay of the hand of the creditor for a time by injunction.
It is urged to the court that the lien upon the personal property has been discharged, growing out of the fact, that the creditor gave bond and security, to abide the decree as a condition upon which the injunction was granted; that this was a substitute for the money, when paid into court in England, and of course applied as well to levies upon real as personal property. To test this doctrine, let us suppose no security is ordered by the fiat upon which the injunction issues; and the sheriff has the personal property in possession by virtue of the execution; what is he to do with it? *375 'retain it until the iniunction is disposed of, because no .. mil injunction bond was given? By no means, ihe sneritt only sees the writ of injunction, issued from the office of the master of the court of chancery — whether the fiat of the Judge required the complainant to give security-, of if ordered, the clerk has taken the same, the sheriff can legally know nothing of, and is authorised to return the exeem tion, “stayed by injunction,” &c. In many cases, bond with security is not required. It was not in this cause of Perkins vs. Thomas. But suppose -it is ordered and given, as in Walker vs. Thomas, would it not be most Unjust to say to the creditor, you must travel through another coitrsc of litigation upon the injunction bond before you are entitled to be paid your judgmeut? Why? Because Walker got an injunction in 1813, and sold the land whilst ittvas pending, for the purpose of defeating my claim. The injunction ivas wrongfully obtained, contrary to my wishes; and that it had the sanction of á chancellor’s fiat, cannot alter the Case, because he was imposed uport by false allegations in the bill. This would be the answer of every sensible mind, Und the one the law gives to the argument examined. The same rule has been laid down in Virginia, in cases of forth-coming bonds. 3 Mun’d. Reports, 445.
Another question is, was the venditioni exponas, enjoined by Perkins in 1817, the proper mode of proceeding to carry into effect the judgment? In all cases of a levy which is suspended by a supersedeas, the venditioni exponas is the proper writ. Milton vs. Edington, 1 Dyer, 98, b; Charter vs. Peetre, Cro. E. 597; Clerk vs. Withers, 1 Salk. 322; see 2 Bay’s Rep. 123; Peck’s Rep. 54.
Of necessity this is the proper mode of proceeding where the hand of the creditor is only stayed by injunction»
Peck, J.
This cause has been argued at great length, Upon the legal question, whether or not the lien created by the judgment had been liasi- — either by the injunction, which had stayed the sale, of by the act of the party in delaying his process; or by suing out, as he did on one occasion, a ca sa against the defendant.
*376 But in my opinion, justice might be done between these parties without settling the question of the lien — although? upon that point, I concur with the opinion of Judge Catron this Case.
Situated as Overton was, with a cloud suspended over him, it was neither against reason nor morals to purchase the right, to direct the execution: it was to relieve himself from a responsibility — and procuring as he did' the direction of the process against the estate of Walker, he in effect acquired the judgment.
If this process against the estate of Walker was wholly in-falid, anda sale under itcouldnot, at law, vest any title in a purchaser, as against Perkins, why should he meddle with-it? If the lien, for any of the reasons given by the defendant’s counsel, had been lost — should Overton, or any other person become the purchaser, such purchase could not affect the right of Perkins; and to put it on that footing, would be to make it a purely legal question, the binding effect of the judgment, or the efficacy of the process as sued out thereon.
But it is said that Perkins purchased the land, the judgment, and the bond given by Overton to quiet Ids title to the land. That he gave something less than the balance of the judgment to Thomas for both the judgment and the bond, is clear from the evidence, which, when added, makes a sum more than double the amount advanced. Thus it would seem, that if Perkins be sustained in his wishes, he will have repaid him the sum he advanced with most exorbitant usury* He gets the land, he gets the lien, and secures to himself $700 of Overton’s money.
This could not be tolerated in a court of equity, even if ’ Perkins had no notice of the agreement of Overton for the direction of this execution. But fix Perkins with notice? and how will the case stand?
It was against all conscience for Perkins to take from Overton the means he had of securing himself, and in the very act of doing it, carry with him also $700 of the money of Overton, for which he pays nothing. Perkins defeats the consideration .of the note, and then wishes to collect it* This cannot be permitted*
*377 Perkins, knowing of the contract of Overton, ought to have .elected either .to have met him on the title expected to b.e acquired on the sale, or to have paid off the judgment, and so quieted hjs own title, and at the same time have removed the difficulty which was suspended over Overton.
Both purchased with .a view to what both considered a lien. The wish of the one was to indemnify himself against his securityship, The wish of the other was to quiet his title to the estate, and the object of both would be attained by payment of the judgment.
The purchase of Overton was conditional — that he would pay if he could get the benefit of his contract, so as to have the means to save himself." The purchase of Perkins was absolute, and his advance of the money might very safely be applied to the payment of the judgment, not to the pur* .chase of the land, for there is not a .consideration for both.
I am aware that the force of this reasoning is attempted to be passed round, by supposing that in fact the lien on this land was lost. But it is too obvious that the one was just as confident of his ability to sustain the lien, as the other was alarmed at the prospect of meeting the difficulty when pre* sented.
The buying up of the judgment was a purchase by Perkins of his peace. The securing of the bond was an attempt to compel Overton to pay for it.
To purchase, under the then existing circumstances, to produce quiet in a question of doubtful issue, ought to afford no plea for Perkins in a court of equity. The very circumstance of its being doubtful in Ms own .mind, proves that he chose, rather to advance the sum given, than otherwise hazard consequences. This proves too, that he paid the money, not for the note that he might harr.ass Overton, but for the judgment which jeopardized him.
It is said that Overton ought to be compelled to pay the note, and take the judgment with liberty to enforce it against other parts of the estate of Walker than the land in question, and as to those lands there should be an injunction. Overton is first in time in the purchase of the judgment, and specially stipulated that he was to pay, if not controlled *378 in bis experiment on this part of the estate. Why then, mouj¿ j-jjg contract for him, by driving him from the objects which he had ip view, to search for others; and if turned to other objects, (and none are shewn to exist) would not the same plea be advanced, that the lien, as to these objects, was libe wise, lost?
Surely it is more reasonable to relieve Overton against his liability, both as to the bond and the judgment; and let Pcrbins search out for something to satisfy the judgment, than to .drive Overton from what he had in fact already laid hold of, to search for something which m,ay not have an existence.
To decree that the judgment is paid off, that the land of Overton shall be cancelled, and Thomas indemnified against Overton for selling a second time to Perkins, might settle the whole dispute between all these parties. Yet we are of opinion that this would be giving countenance overmuch to a disposition to overreach the rights and acquired interests of others; and we are the less inclined to it, because the purchase set up by Perkins is against law, and Yoid, beiug made to defeat the influence of the judgment.